UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peggy Miller,

   Plaintiff,

 v.

Javitch, Block & Rathbone, et al.,

   Defendants.

Case No. 1:06cv828

Judge Michael R. Barrett

## ORDER

This matter is before the Court on Defendants' motion for judgment on the pleadings (Doc. 4); Defendants' motion for leave to file 25 page memorandum instanter (Doc. 5); Defendants' motion for order to take judicial notice (Doc. 9); Defendants' motion for leave to file instanter, supplemental memorandum regarding Defendants claim of Unconstitutionality (Doc. 16); United States of America's unopposed motion to intervene (Doc. 32); and Defendants' motion for extension of time to complete discovery (Doc. 40).

Plaintiff did not oppose Docs. 5, 9 or 16. Therefore, for good cause shown, Defendants' motion for leave to file 25 page memorandum instanter (Doc. 5) is hereby GRANTED; Defendants' motion for order to take judicial notice (Doc. 9) is hereby GRANTED; Defendants' motion for leave to file instanter, supplemental memorandum regarding Defendants claim of Unconstitutionality (Doc. 16) is hereby GRANTED. The United States of America's unopposed motion to intervene (Doc. 32) is also hereby GRANTED. Defendants' motion for extension of time to complete discovery (Doc. 40) is hereby DENIED as MOOT as this Court, per minute entry of August 8, 2007, informally extended discovery through August 31, 2007.

I. <u>Underlying Facts</u>

Plaintiff, on behalf of herself and those similarly situated, has alleged that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by allegedly misrepresenting the status of a debts in state court collection actions. In particular to Peggy Miller, Defendants represented Palisades Collection, LLC in a state court collection action against Ms. Miller. The complaint in the state court action alleged that money was due from Ms. Miller to Palisades on the "money loaned" on Ms. Miller's charge card debt. (Doc. 1, ¶11). No accounting was attached to the complaint. (Id. ¶13). Ms. Miller alleges that no money was loaned by Palisades and, in fact, the alleged debt attempted to be collected was from an open-ended credit card. Thus, the alleged debt was for the purchase of goods. (Id. ¶12).

Plaintiff asserts that Defendants misrepresented the status of the debt to (1) avoid the procedural requirement that an accounting be attached to all "complaints on accounts" in violation of Ohio Civil Procedure Rule 10(D)(1); (2) to imply that funds were actually transferred to the debtor; and (3) to imply that Palisades was a holder in due course. Plaintiff claims that these alleged misrepresentations violate 15 U.S.C. §1692e(2)(a), §1692e(10) and §1692e(12).

II. <u>Motion for Judgment on the Pleadings</u>

A. <u>Standard of Review</u>

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. *Thomas v. Gee*, 850 F.Supp. 665, 668 (S.D. Ohio 1994), *citing*, *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon such

motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Id.*, *citing*, *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, (May 21, 2007)[1], a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

---

[1]The Sixth Circuit has not directly applied the *Twombly* motion to dismiss standard yet. However, in a footnote in a recent case, it indicates that *Twombly* did not heighten the standard. The Court stated: "Moreover, although this case does not present the question of if, or exactly how, *Twombly* has changed the pleading requirements of Federal Rule of Civil Procedure 8(a), we note that in *Erickson v. Pardus*, U.S. , 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), decided after *Twombly*, the Supreme Court reaffirmed that Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 2200 (internal quotation marks omitted) ... In any event, for the reasons described infra, we conclude that the Lindsays have pleaded sufficient facts giving rise to a "reasonably founded hope that the discovery process will reveal relevant evidence" to support their claims. *Twombly*, 127 S. Ct. at 1967, 127 S. Ct. at 1967 (internal quotation marks omitted)." *Lindsay v. Yates,* 2007 U.S. App. LEXIS 19338, 12-13 n.6 (6th Cir. 2007). See also *Weisbarth v. Geauga Park District,* 2007 U.S. App. LEXIS 20261 (6th Cir. 2007).

at 1965. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

  B.  <u>Immunity and Constitutional Arguments</u>

Defendants, as in numerous other Fair Debt cases, raise several arguments of immunity, including, absolute immunity under the witness immunity doctrine, absolute immunity from statements made in the course of a judicial proceeding, qualified immunity under the First Amendment and the Noerr-Pennington doctrine as well as arguments that the FDCPA is unconstitutional. These issues have been ruled upon time and time again. Most recently in *Gionis v. Javitch, Block & Rathbone, LLP*, 2007 U.S. App. LEXIS 14054 (6th Cir. 2007) (Finding that litigation immunity, witness immunity nor qualified immunity under the First Amendment shields Defendants from liability under the FDCPA). Although, not specifically addressed in *Gionis,* the Court finds that Defendants are also not entitled to immunity under the Noerr-Pennington doctrine. *See Heintz v. Jenkins* where the Supreme Court held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*." 514 U.S. 291, 299 (1995)(emphasis added). If the Supreme Court wanted the Noerr-Pennington doctrine to apply, it would have found otherwise.[2]

As to the constitutionality argument, by way of this Order the Court has granted the motion of the United States of America to intervene in this matter to address this issue. Thus, the Court declines to decide the constitutionality of the FDCPA at this time.

---

[2]The Noerr-Pennington doctrine was developed by the Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). It was later expanded in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

### C. Claim for Relief

Congress enacted the Fair Debt Collection Practices Act (FDCPA) "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e. The Sixth Circuit has gone on to note that the FDCPA is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the case of an innocent or de minimis violation. *See Frey v. Gangwish*, 970 F. 2d 1516, 1521 (6th Cir. 1992).

Plaintiff, on behalf of herself and those similarly situated, bring this action pursuant to 15 U.S.C. §§1692e, 1692e(2), 1692e(10) and 1692e(12) which state as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ...
> (2) The false representation of – (A) the character, amount, or legal status of any debt; or
> ...
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
> ...
> (12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

15 U.S.C. §1692(e). To determine whether a debt collection practice is deceptive or misleading, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 864 (S.D. Ohio 2005) *citing Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). *See also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998).

This standard "protects all consumers, the gullible as well as the shrewd." *Id. citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Plaintiff asserts that the collection complaint represented that it was suing "for money loaned", that Palisades Collection LLC, the Plaintiff in that state court action, was the "owner of funds loaned" and the balance due "on the money loaned on defendant's [Ms.Miller's] charge card debt" is $4,604.56. Plaintiff asserts that no money was ever loaned to Plaintiff by Palisades Collection LLC or its predecessors-in-interest; "instead, the original creditor was the issuer of an open-ended credit card and therefore financed alleged sales of goods to Plaintiff by third parties." Doc. 1, ¶¶9-12.

Defendants counter that the collection complaint filed in state court was not false, deceptive or misleading but that it was a true refection of the account status. Defendants argue that its decision to file a "complaint for money loaned" as opposed to a "complaint on an account" was theirs to decide and that the Ohio Civil Rules of Procedure, in fact, gives them that choice. See Official Form 5 in the Ohio Civil Rules of Procedure. Defendants further argue that by using a credit card to purchase goods or services that Plaintiff received a loan, citing *In re Mercer*, 246 F.3d 391 (5th Cir. 2001), a bankruptcy discharge case. Defendants argue that this action for money loaned has a long history under the theory of assumpsit.

1. Complaint for Money Loaned.

Typically, credit card debt is one that is considered "an account" where there is a balance sheet of sorts that lists the purchases made with the credit card and the payments received by the card issuer. This approach of calling it a loan is a novel one. Although the Ohio Civil Rules of Procedure do provide for a complaint for money loaned, the question

6

is whether or not a claim that has historically been one on an account can now be plead as one for money loaned. Defendant cites a handful of cases from other circuits and state courts as well as various other secondary sources for the proposition that a credit card transaction equates to a loan by the credit card issuer to the credit card holder.

In *In re Mercer*, 246 F.3d 391, 406 (5th Cir. 2001), a bankruptcy discharge case, the Court stated that "...by each card-use, [the debtor] requested a loan against that line; and by approving each card-use, and therefore reimbursing the merchant, including an ATM owner, USC [the credit card issuer] made a loan to her." Defendants also cite, in a footnote, *Wiitanen v. C&S Development Co.*, 2005 Ohio 393 (8th Dist. App.) as an example of a case where an Ohio court recognized a complaint for money loaned. However, the Court finds *Wiitanen* to be distinguishable to this case. In *Wiitanen*, the Plaintiff sought to recover "for money loaned" to her brother and his business, C&S Development Co. The "money loaned" included purchases for C&S that were placed on her personal credit card that she paid for or partially paid for as well as from her personal bank credit line and cash advances. *Wiitanen* is the typical case that this Court would expect to be one for "money loaned" where there was only an oral promise to repay.

On the contrary, Plaintiff cites to an Ohio Eighth Appellate District court case, *Discover Financial Services, Inc. v. Belmont*, 2006 Ohio 1539 (8th Dist. App.) which was filed as a breach of contract claim against Belmont for his breach of the credit card agreement for failing to pay his credit card debt. In analyzing damages, the Court stated that "...Discover did not 'loan' Belmont any funds ...." *Id.* at *P4. Plaintiff argues that this decision supports it contention that credit card debt does not equate to a loan.

However, Defendants also cite *May Co. v. Trusnick,* 54 Ohio App.2d 71, 75 (8th Dist. App. 1977), a statute of limitations case involving the failure of a debtor [Trusnik] to timely pay for purchases placed on an account at a retail store [The May Company]. The *May* Court cited *Harris Trust and Savings Bank v. McCray* (1974), 21 Ill. App. 3d 605, 316 N.E. 2d 209. In *Harris Trust* the issuer of a bank credit card sued the cardholder to recover the balance due on the cardholder's account. Harris Trust argued that the cause of action arose when the cardholder failed to repay the bank for funds advanced to the merchant. The Court agreed with Harris Trust and held "money advanced to a merchant in payment for merchandise received by the defendant constitutes a loan." *Id* at 608. The *May* Court distinguished *Harris Trust* by stating that, "[i]n the present case the purchase money was loaned by The May Company, not by a third party as in *Harris Trust*, supra." *May Co. v. Trusnik*, 54 Ohio App. 2d at 75. The factual allegations of the underlying state court collection case are more in line with *Harris Trust* whereby a credit card company issued a credit card to Miller who in turn used the credit card to make purchases at merchant stores.

The *Harris Trust* Court provided a good summary of the credit card issuer/holder relationship:

> The bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system. The issuer bank establishes an account on behalf of the person to whom the card is issued, and the two parties enter into an agreement which governs their relationship. This agreement provides that the bank will pay for cardholder's account the amount of merchandise or services purchased through the use of the credit card and will also make cash loans available to the cardholder. It also states that the cardholder shall be liable to the bank for advances and payments made by the bank and that the cardholder's obligation to pay the bank shall not be affected or impaired by any dispute, claim or demand by the cardholder with respect to any merchandise or service purchased.

> The merchants participating in the system agree to honor the bank's credit cards. The bank irrevocably agrees to honor and pay the sales slips presented by the merchant if the merchant performs his undertakings, such as checking the list of revoked cards before accepting the card. ...

*Harris Trust & Sav. Bank v. McCray*, 21 Ill. App. 3d 605, 607-608 (Ill. App. Ct. 1974).[3]

Based upon the reasoning in *Harris Trust,* the fact that money was actually paid by the credit card issuer to merchants on the credit card holders' behalf, and Form 5 in the Ohio Rules of Civil Procedure, the Court finds that the filing of an action for "money loaned" by a credit card issuer or its successor to recover funds owed from a credit card holder does not violate the FDCPA. Further, it then follows the allegations in the state court complaint are not false. Thus, there is no violation of 15 U.S.C. §§1692e(2), except as noted below, and 1692e(10).

### 2. Misleading Statements.

Plaintiff then argues, in the alternative, that even if the credit card transactions equate to a loan and that the "complaint for money loaned" is literally true as the Court has found above, that the complaint and the allegations are misleading and still violate §1692e. Plaintiff argues that the following phrases are misleading: "complaint for money loaned"; "the owner of funds loaned on account number XXXX..."; and "there is presently due the Plaintiff from the Defendant(s) on the money loaned on defendant's charge card debt...". In support of its contention that literally true statements can still be misleading, the Plaintiff cites *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006)("in some cases 'the literal truth may convey a misleading impression that violates §1692e'");

---

[3]Plaintiff cites to *U.S. v. Dabbs*, 134 F.3d 1071, 1074 (5th Cir. 1998) to explain the credit card system. However, that case focuses more on the merchants role in the system and not the credit card holder.

*Foresberg v. Fidelity Nat. Credit Services, Ltd.,* 2004 WL 3510771, *5 (S.D. Cal.)("Even '[l]iterally true statements, partial truths, and ambiguous statements are deceptive if the statement is subject to an interpretation or contains an implication with the capacity to deceive. Good Faith is not a defense'."); and *Rosa v. Gaynor*, 784 F. Supp. 1, *12 (D. Conn. 1989)("'[A] statement which is literally true may, nonetheless, be unlawfully deceptive.'"). Plaintiff then urges the Court to follow these decisions. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." The Court finds that this purpose is served by adopting the reasoning in the cases set forth above. This Court can imagine various situations wherein a debt collector, while making a factually true statement, does so in a manner that the least sophisticated debtor would certainly feel threatened. Whether the allegations in the state court complaint that are at issue here are "misleading" is a factual question, which may not be determined at this stage of the litigation. Thus, Plaintiff has stated a claim under §1692e as it relates to the allegedly misleading allegations in the state court complaint.

        3.        Innocent Purchaser for Value.

Plaintiff finally argues that one of the purposes of calling this debt a loan was to misrepresent the legal status of the debt to imply that Palisades was a holder in due course. Doc. 1 ¶15. In *Hartman v. Asset Acceptance Corp.*, 476 F. Supp.2d 769, 779 (S.D. Ohio 2004), Chief Judge Beckwith found that a representation that a debt collector was a "holder in due course" was a violation of the 1692e(2) and (12) if the representation was, in fact, false and there could be no bona fide error defense. Although Defendants in the state court collection complaint did not specifically state that its client was a "holder in due course", it did state that "Plaintiff acquired, for a valuable consideration, all right, title

and interest in and to the claim set forth below originally owed by Defendant(s) to ASTA II/Providian-03/NAT." Doc. 1, Exh. A, ¶1. Essentially, Defendants' just described a "holder in due course" instead of using the actual phrase. Taking the allegations in the complaint as true (See Doc. 1 ¶15, 19), as the Court must at this stage of the litigation, the state court allegation that "Plaintiff acquired, for a valuable consideration, all right, title and interest in and to the claim set forth below ..." is false or implies that the account had been turned over to an innocent purchaser for value in violation of 1692e(2) and (12). Thus, Ms. Miller has sufficiently stated a §1692e claim to survive a 12(b)(6) motion on this issue.

III.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. 4) is hereby GRANTED, in part, and DENIED, in part. Defendants' motion for leave to file 25 page memorandum instanter (Doc. 5); Defendants' motion for order to take judicial notice (Doc. 9); Defendants' motion for leave to file instanter, supplemental memorandum regarding Defendants claim of Unconstitutionality (Doc. 16); and the United States of America's unopposed motion to intervene (Doc. 32) are GRANTED. The Clerk of Court is directed to add the United States of America as a party to this litigation. Defendants' motion for extension of time to complete discovery (Doc. 40) is DENIED as MOOT.

**IT IS SO ORDERED**.

/s/Michael R. Barrett
Michael R. Barrett, Judge
United States Court