**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Peggy Miller,

        Plaintiff,

      v.

Javitch, Block & Rathbone, et al.,

        Defendants.

Case No. 1:06cv828

Judge Michael R. Barrett

<u>ORDER</u>

This matter is before the Court pursuant to Plaintiff's motion for partial summary judgment (Doc. 48).  Defendants filed a memorandum in opposition (Doc. 64) to which Plaintiff replied (Doc. 71).  Also before the Court is Defendants' motion for summary judgment (Doc. 49).  The United States of America, as intervenor, filed a memorandum in opposition limited to the unconstitutionality questions raised by Defendants (Doc. 69). Plaintiff also filed a memorandum in opposition (Doc. 72).  Defendants filed a reply (Doc. 77).  These matters are now ripe for review.  Both motions will be addressed together.

    I.    <u>Underlying Facts</u>

Plaintiff, on behalf of herself and those similarly situated, has alleged that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by allegedly misrepresenting the status of debts in state court collection actions.  In particular to Peggy Miller, Defendants represented Palisades Collection, LLC in a state court collection action against Ms. Miller (hereinafter the "state court complaint") (Doc. 1, Exh. A).  The state court complaint alleged that money was due from Ms. Miller to Palisades on the "money loaned" on Ms. Miller's charge card debt. (Doc. 1, ¶11, Doc. 3, ¶12).  No accounting was attached

to the complaint. (See Doc. 1, Exh. A).  Ms. Miller alleges that no money was loaned by Palisades and, in fact, the alleged debt attempted to be collected was from an open-ended credit card issued by Providian. (Id. ¶12).  Plaintiff admits to having the credit card and that the debt went unpaid (Doc. 49, Exh. 3, p23).  She also admits to receiving the terms and conditions that came with the credit card. (Id. at 26).

Plaintiff asserts that Defendants misrepresented the status of the debt to (1) avoid the procedural requirement that an accounting be attached to all "complaints on accounts" in violation of Ohio Civil Procedure Rule 10(D)(1); (2) to imply that funds were actually transferred to the debtor; and (3) to imply that Palisades was a holder in due course. Plaintiff claims that these alleged misrepresentations violate 15 U.S.C. §1692e(2)(a), §1692e(10) and §1692e(12).  Defendant denies these allegations.

II.     Motion for Summary Judgment

A.      Jurisidiction

The FDCPA specifically provides for federal jurisdiction over claims made pursuant to the Act, see 15 U.S.C. §1692k(d), and the Court has federal question jurisdiction under 28 U.S.C. §1331.

B.      Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of

2

production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

"In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,* 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS,* 267 F. Supp. 2d 823, 829 (D. Ohio 2003).

3

C.    Analysis

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. §1692e.  The Sixth Circuit has gone on to note that the FDCPA is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the case of an innocent or de minimis violation.  *See Frey v. Gangwish*, 970 F. 2d 1516, 1521 (6th Cir. 1992).

After the Court's ruling on Defendants motion to dismiss, the following claims of Plaintiff, on behalf of herself and those similarly situated, remain:  15 U.S.C. §§1692e, 1692e(2), and 1692e(12).  The relevant sections of 15 U.S.C. §1692e are as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> ...
> (2) The false representation of – (A) the character, amount, or legal status of any debt; or
> ...
> (12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

15 U.S.C. §1692(e).  To determine whether a debt collection practice is deceptive or misleading, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 864 (S.D. Ohio 2005) *citing Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). *See also Lewis v. ACB Bus. Servs., Inc*., 135 F.3d 389, 400 (6th Cir. 1998).

4

This standard "protects all consumers, the gullible as well as the shrewd." *Id. citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "Although this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Federal Home Loan Mortgage Corp. v. Lamar,* 503 F.3d 504, 509-510 (6ᵗʰ Cir. 2007) *citing Wilson v. Quadramed Corp.,* 225 F.3d 350, 354-55 (3ʳᵈ Cir. 2000)(internal citation omitted). The Court in *Lamar* went on to sate that "this standard assumes that a Validation Notice [or, as in this case, a state court complaint] is read in its entirety, carefully and with some elementary level of understanding." *Id.* at 510 *citing Martinez v. Law Offices of David J. Stern, P.A.,* 266 B.R. 523,532 (Bankr. S.D.Fla. 2001).

      1.      Violation of 15 U.S.C. §1692e(2) and §1692e(12).

The Defendants in the state court complaint alleged that "Plaintiff [Palisades Collection, LLC] acquired, for valuable consideration, all right, title and interest in and to [Miller's credit card debt] originally owed by [Miller] to ASTA II/Providian-03/NAT." (Doc. 49, Exh. 1, ¶1). Plaintiff asserts that this allegation is false or implies that the account has been turned over to an innocent purchaser for value and that it misrepresents the legal status of the debt in violation of 15 U.S.C. §1692e(2) and 1692e(12).

In *Hartman v. Asset Acceptance Corp*., 476 F. Supp.2d 769, 779 (S.D. Ohio 2004), Chief Judge Beckwith found that a representation that a debt collector was a "holder in due course" was a violation of the 1692e(2) and (12) if the representation was, in fact, false and there could be no bona fide error defense. For purposes of ruling on the motion to dismiss,

5

the Court found the language in the state court complaint to be analogous to that of a holder in due course.  However, the Plaintiff has failed to point to any evidence that would support its claim.  Plaintiff has presented no evidence that the statement is false, i.e. that Palisades Collection, LLC did not acquire, for valuable consideration, all right, title and interest in to Miller's credit card debt from ASTA II/Providian-03/NAT.   However, Defendants have presented ample evidence that it did, in fact, purchase all right, title and interest to Miller's debt.  Although the purchase price for Miller's debt was $189.25, a far cry from the amount owed on the Debt, the Court finds that the statement is not false and therefore, not a violation of 15 U.S.C. §1692e(2) and 1692e(12). (See Doc. 49, Exh. 8[1]).

2.      Violation of 15 U.S.C. §1692e

Plaintiff argues that the allegations in the state court complaint are misleading and violate §1692e.  Specifically, Plaintiff argues that the following phrases are misleading: "complaint for money loaned"; "the owner of funds loaned on account number XXXX..."; and "there is presently due the Plaintiff from the Defendant(s) on the money loaned on defendant's charge card debt...".  Literally true statements can be misleading and, thus, violated §1692e.  See *Gionis v. Javitch, Block & Rathbone, LLP*, 238 Fed. Appx. 24, 2007 U.S. App. LEXIS 14054 (6th Cir. 2007); *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).  However, the Plaintiff has failed to present any evidence that the statements were misleading.  Plaintiff has presented no affidavits,[2] other than one from

---

[1]Defendants argue that the holder in due course doctrine has no application to a credit card obligation as it is not created under a negotiable instrument.  Based upon the ruling herein, the Court declines to address this argument.

[2]The Seventh Circuit, in *Taylor v. Cavalry Investment, L.L.C.,* 365 F.3d 572, 574 (7th Cir. 2004), stated that the single affidavit would be an "unavailing" form of proof to

Plaintiff's counsel, no surveys[3], no expert opinion, nothing to demonstrate that a genuine issue of fact exists. In fact, Plaintiff admits that when she first saw the state court complaint she was not confused. (Doc. 49, Exh. 16, #26).

In addition to the above mentioned admission, the Court notes that the Plaintiff stated in her deposition that she read the state court complaint, and that she "pretty much" understood it. (Doc. 49, Exh. 3, p40). However, she also found the title "complaint for money loaned" to be confusing (Id., at 41). She testified that she did not understand paragraph 2 of the state court complaint wherein it says "[t]here is presently due the plaintiff from the defendant on the money loaned on defendant's charge card debt." (Id. at 43).[4] However, the Court does not find that this testimony alone, without more evidence, supports that a genuine issue of fact exists. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1061-62 (7th Cir. 2000) (holding that a plaintiff's self-serving deposition testimony was not enough for her FDCPA claim to survive summary judgment, but that a consumer survey may have been sufficient).

---

find that a genuine issue of fact exists.

[3]The Seventh Circuit has found that a "carefully designed and conducted consumer survey is one way to create a triable issue of fact as to how an unsophisticated consumer would interpret a collection letter." *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 760 (7th Cir. 2006).

[4]The Court notes that Plaintiff testified in her deposition that the underlying state court complaint was the first time that she had been sued (See Plaintiff's Depo., Doc. 49, Exh 3, p13); however, the Defendants have presented evidence that Plaintiff was sued at least two prior times in collection cases similar to the underlying case (See Doc. 49, Exh 9 and 10). Furthermore, Karyn Leitzell from the Southeastern Ohio Legal Services represented Plaintiff in those two prior cases as well in the underlying state court complaint at issue here. (Id.)

7

Had the state court complaint stated only that it was a "complaint for money loaned" than this inquiry may very well have turned out differently.  However, it also stated "the owner of funds loaned on account number XXXX..."; and "there is presently due the Plaintiff from the Defendant(s) on the money loaned on defendant's charge card debt...".  Even the least sophisticated consumer would be able to know if the account number stated in the underlying complaint was one that belong to him or her.  In addition, the language specifically says "on defendant's charge card debt."  The least sophisticated consumer, with a careful reading of the entire state court complaint would understand that he or she was being sued for the collection of an unpaid credit card balance.  Based upon the above, the Court does not find these statements to be misleading.

The Defendants then spend a significant portion of their briefs arguing that a credit card debt is a loan.  Defendants point out that the very first numbered paragraph of the Providian National Bank Account Agreement associated with Ms. Miller's account specifically states that "You promise to pay us when due all amounts <u>borrowed</u> when you or someone else uses your Account...". (Doc. 49, Exh. 8(C)(emphasis added)).  And that the Office of the Comptroller of the Currency has indicated that it treats credit card accounts as loans.  (See Doc. 49, Exh. 13, p 16-17).  Based upon the above holdings, the Court does not find it necessary to fully address this issue.  With that being said, and in consideration of this Court's ruling on the motion to dismiss, this Court finds that an unpaid balance on a credit card may be deemed a loan.

3.    Bona Fide Error Defense

Even if Plaintiff had shown that genuine issues of fact existed mandating that this matter proceed to trial, the Court finds that Defendants are entitled to the bona fide error defense under 15 U.S.C. §1692k(c).  For a bona fide error defense to be successful, a "debt collector must only show that the violation was unintentional, not that the communication itself was unintentional."  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  This principal is applicable to mistakes of law as well as clerical errors.  *See Delawder v. Platinum Fin. Serv. Corp.,* 443 F. Supp.2d 942, 952 (S.D. Ohio 2005).

Defendants demonstrated, through affidavits (See Doc. 49, Exh. 6 and 7), that considerable time, effort and research was spent in evaluating the sufficiency of a "complaint for money loaned" in light of the recent decisions in this district.  See *Ison v. Javitch, Block & Rathbone,* 1:04cv846, Doc. No. 86; *Williams v. Javitch, Block & Rathbone,* 480 F. Supp.2d 1016 (S.D. Ohio 2007); and *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp.2d 856 (S.D. Ohio 2005).  Javitch, Block & Rathbone has a compliance department that is responsible for informing and defining for the management department of the firm the requirements under federal and state law, including the FDCPA.  (Doc. 49, Exh. 6). In addition, the Defendants submitted the reports two experts.  David Lavine explains the accounts receivable management industry and opines that the manner in which the Defendants receive their information and the amount of information that they receive are standard in the industry. (See Doc. 49, Exh 4).  Manuel H. Newburger opines "that the money loaned complaint is consistent with the collection industry standards to the extent

that it seeks recovery of a specified amount owed on a credit card debt." (See Doc. 49, Exh. 5 ¶4, 6). The Plaintiff does not respond to either of these experts and does not offer any expert opinion of her own. Obviously, the Defendants have a vested interested in not violating the FDCPA as counsel for Plaintiff has sued Javitch, Block & Rathbone at least ten times in this district alone for such violations. The Court finds that Defendants are entitled to the bona fide error defense under 15 U.S.C. §1692k(c).

The following passage is from the Sixth Circuit in *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir. 2007) quoting *Jacobson v. Healthcare Fin. Servs.*, 434 F. Supp. 2d 133, 138 (D.N.Y. 2006):

> As a district court in the Second Circuit recently noted "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation." *Jacobson*, 434 F. Supp. 2d at 138. The court in Jacobson continued:

>> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id*. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs . . . .

>> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $ 400 purchase. His debt remains unpaid and undisputed.

> He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and -- rather than simply pay what he owes -- repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S. Ct. 1347, 1349, 93 L. Ed. 1801 (1949).

> Id. at 138-39 (emphasis added). We echo Jacobson's sentiments and concerns. Lamar fits the description of Jacobson's hypothetical consumer to a tee, and we will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." *Id.* at 138.

This Court concurs.

4.    Unconstitutionality of the FDCPA

Based upon the above holdings, the Court declines to address the issue of the unconstitutionality of the FDCPA.  "This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided.  This same rule should guide the lower courts as well as this one."  *Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136-137 (U.S. 1946).  *See also Rice v. Walls*, 213 F.2d 693, 698 (6th Cir. 1954)( The principle of avoiding constitutional questions is one which was conceived out of considerations of sound judicial administration. It is a traditional policy of our courts); *Mihalek Corp. v. Michigan,* 814 F.2d 290, 296 (6th Cir. 1987).

     5.      Dismissal of Individual Defendants

Based upon the above holdings, this issue is now MOOT.

III.   <u>Conclusion</u>

Therefore, Plaintiff's motion for partial summary judgement is DENIED and Defendant's motion for summary judgment is GRANTED.  All other pending motions (Doc. 47, 75, 79 and 89) are DENIED as MOOT.  This matter is now closed.  The Clerk is directed to terminate this matter from the docket of this Court.

**IT IS SO ORDERED.**

/s/Michael R. Barrett
Michael R. Barrett, Judge
United States Court

12